# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMMY RAY WILLIAMS,<br><br>        Petitioner,<br><br>v.<br><br>MIKE KNOWLES, Warden,<br><br>        Respondent. | 1:03-cv-05819-TAG HC<br><br>ORDER DENYING RESPONDENT'S RENEWED MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS AS UNTIMELY<br>(Doc. 28)<br><br>ORDER REQUIRING RESPONDENT TO FILE AN ANSWER<br><br>ORDER SETTING BRIEFING SCHEDULE |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to Title 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.

**PROCEDURAL HISTORY**

Petitioner is confined pursuant to the judgment of the Superior Court of the State of California, County of Tuolumne, imposed on October 23, 1998. (Doc. 8, Exh. A). Petitioner was convicted of second degree murder (Cal. Pen. Code §187(a)), and driving under the influence causing injury (Cal. Veh. Code § 23153(a)). (Id.). The Court imposed an indeterminate 15-year-to-life sentence for the second degree murder conviction plus a determinate three-year concurrent term for driving under the influence causing injury. (Id.).

The parties dispute whether Petitioner timely appealed his conviction. On December 17, 1998, Petitioner signed two requests to withdraw his guilty plea, one for the Court of Appeal,

Fifth Appellate District ("5th DCA") and one for the Tuolumne County Superior Court. (Doc. 38, Exh. B). Prison mail records logged these two documents on December 23, 1998. (Doc. 38, Exh. C). It is undisputed that the Superior Court received the document on December 28, 1998, and lodged it but did not file it. (Doc. 38, Exh. D). Although the Superior Court apparently construed the document as a notice of appeal, it notified Petitioner that his filing was deemed late since it was received beyond the 60-day period for filing a notice of appeal. (Id.). On March 24, 1999, the 5th DCA issued an order denying the motion for acceptance of appeal, indicating that the appeal had been received beyond the 60-day period and that Petitioner had waived his right to appeal because of his change of plea. (Doc. 38, Exh. E).

On May 9, 2002, Petitioner filed a petition for writ of habeas corpus with the Tuolumne County Superior Court. (Doc. 8, Exh. B). This petition appears to raise three grounds for relief: (1) ineffective assistance of trial counsel in that counsel, because of fear for her own safety and intimidation resulting from the local publicity, pressured Petitioner to accept a guilty plea rather than go to trial; (2) newly discovered evidence, i.e., an autopsy report of the victim indicating that peritonitis from an improperly placed feeding tube, not blunt head trauma resulting from the collision with Petitioner's vehicle, caused the victim's death; (3) failure of the trial court to sua sponte inquire into the effectiveness of counsel once the court was advised of threats against counsel and Petitioner; and (4) error in imposing a restitution fine without conducting a hearing on Petitioner's ability to pay. (Doc. 8, Exh. B). The Superior Court habeas petition was denied on September 9, 2002. (Id., Exh. C).

On October 3, 2002, Petitioner filed a habeas petition in the 5th DCA, raising the same issues as the previous petition. (Doc. 8, Exh. D). This second petition was denied on November 14, 2002. (Id., Exh. E). On December 10, 2002, Petitioner filed a third petition for writ of habeas corpus with the California Supreme Court, raising the same issues as in the previous two petitions. (Id., Exh. F). This last petition was denied on April 30, 2003. (Id., Exh. G).

Petitioner filed his initial federal petition on June 16, 2003, in the U.S. District Court for the Eastern District of California. (Doc. 1). Appended to the petition are the same legal briefs and arguments Petitioner raised in each of his three state court habeas petitions. (Id.). On June

30, 2003, this Court issued an Order directing Respondent to file an answer, or, in the alternative, a motion to dismiss the petition. (Doc. 5). On September 2, 2003, Respondent submitted a motion to dismiss the petition on the grounds it was submitted beyond the one-year statute of limitations. (Doc. 8). Petitioner opposed the motion on September 22, 2003. (Doc. 9). Both parties have consented to the jurisdiction of the United States Magistrate Judge. (Docs. 3, 7).

On December 3, 2003, the Court issued an order granting Respondent's motion to dismiss, dismissing the petition, and entering judgment in favor of Respondent. (Docs. 11, 12). Petitioner filed a notice of appeal on December 29, 2003. (Doc. 13). On October 26, 2004, at the conclusion of the appeal process, the Court of Appeals for the Ninth Circuit issued an order vacating the judgment of this Court and remanding the case "for further factual development, and if determined appropriate by the district court, an evidentiary hearing, to determine (1) whether petitioner satisfied the actual innocence test set forth in Schlup v. Delo, 513 U.S. 298 (1995); (2) whether the statute of limitations began to run on August 30, 2001, the date petitioner discovered the factual predicate for his claims; and (3) whether the statute of limitations should be equitably tolled until August 30, 2001." (Doc. 23).

On April 18, 2005, Respondent filed a renewed Motion to Dismiss, again based on a violation of the one-year statute of limitations. (Doc. 28). In this Motion, Respondent addresses only "actual innocence" under Schlup, and tolling for newly discovered evidence under sec. 2244(d)(1)(d); Respondent does not address the issue of equitable tolling. (Doc. 28, pp. 5-9). On September 27, 2005, Petitioner's counsel filed an Opposition to Respondent's Motion, supported, inter alia, by a Declaration from Petitioner, prison mail logs, and the case log of trial counsel. (Doc. 37). Respondent filed no Reply.

**DISCUSSION**

A. Procedural Grounds for Motion to Dismiss

On April 18, 2005, Respondent has filed a Motion to Dismiss the petition as being filed outside the one-year limitations period prescribed by Title 28 U.S.C. § 2244(d)(1). (Doc. 28.) Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner

is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed Respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss after the court orders a response, and the court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

In this case, Respondent's Motion to Dismiss is based on a violation of 28 U.S.C. 2244(d)(1)'s one-year limitation period. Because Respondent's Motion to Dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal answer, the Court will review Respondent's Motion to Dismiss pursuant to its authority under Rule 4.

B.   Limitation Period for Filing a Petition for Writ of Habeas Corpus

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997). The original petition in this case was filed on June 16, 2003 (Doc. 1), and thus, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, section 2244, subdivision (d) reads:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

  In this case, Petitioner was convicted on October 1, 1998 and sentenced on October 23, 1998. (Doc. 8, Exh. A). Respondent asserts that Petitioner filed no valid direct appeal from his conviction, and therefore the one-year statute commenced to run 60 days later, i.e., on December 22, 1998. (Doc. 8, p. 2). In the Ninth Circuit, Petitioner conceded that he had not filed an appeal. (Doc. 28, LD 1, p. 3). Petitioner now contends, however, that the document entitled "Notice of Withdraw Pre-Plea Bargain," signed by Petitioner on December 17, 1998, and sent to both the Tuolumne County Superior Court and the 5th DCA, constituted an appeal. (Doc. 38, Exh. B). Moreover, Petitioner argues that the "mailbox rule" of deeming a petition filed on the date it is delivered from the inmate to prison authorities governs the filing of his direct appeal in state court as well and makes his "appeal" timely. (Doc. 37, p. 3, fn. 2). As mentioned, the Superior Court received and lodged the Notice on December 28, 1998, but considered it untimely. (Doc. 38, Exh. D). On March 24, 1999, the 5th DCA issued an order refusing to accept Petitioner's Notice as a timely appeal. (Doc. 38, Exh. D). Petitioner now maintains that the one-year period commenced 60 days after this last order, or on May 23, 1999, rather than on December 22, 1998. (Doc. 37, p. 3).

  In In re Jordan, 4 Cal.4th 116 (1992), the California Supreme Court affirmed the "prison delivery" rule, whereby an inmate's notice of appeal is deemed timely if delivered to prison authorities before the expiration of the 60-day period provided for in California Rule of Court,

5

1  Rule 31(a). Jordan, 4 Cal.4th at 129. Citing Houston v. Lack, 487 U.S. 266 (1988), which sets
2  forth the federal "mailbox" rule for habeas petitions, the California Supreme Court rejected the
3  contention that amendments to Rule 31(a) extending the period of filing the notice of appeal
4  from 10 to 60 days had abrogating earlier case law articulating the "prison delivery" rule. Id.
5  Thus, under California law, a notice of appeal is timely if delivered to prison authorities within
6  the 60-day period for filing such notices, even if the notice itself is not filed with the appropriate
7  court until after the expiration of the 60-day period. Id. at 130.

8  Petitioner contends that he signed both documents on December 17, 1998, and also that
9  he delivered them that same date to prison authorities, which would, under the Jordan rule, make
10 Petitioner's filing timely. (Doc. 38, p. 2). However, Petitioner also has supplied the prison mail
11 record that logged in these two documents on December 23, 1998. (Id.). This would be one day
12 *beyond* the expiration of the 60-day period provided for in Rule 31(a). The prison log does not
13 indicate when the documents were actually received from Petitioner. Thus the Court is faced
14 with a discrepancy between Petitioner's assertion in his declaration, and the accompanying prison
15 mail log supplied by Petitioner. Petitioner does not challenge the mail log's entry of January 11,
16 1999, as being accurate and as correctly reflecting the date he received the order from the 5th
17 DCA rejecting his appeal, nor did he raise this issue at any time prior to his opposition to this
18 renewed motion to dismiss. Indeed, as mentioned, in his Ninth Circuit brief he conceded that he
19 had not filed an appeal.

20 Based upon the evidence in the prison mail log and Petitioner's failure to raise this issue
21 at any earlier time, the Court finds that the purported notice of appeal was delivered to prison
22 officials on December 23, 1998, one day *after* the expiration of the 60-day period for filing a
23 notice of appeal. Hence, the notice of appeal was not timely. In re Chavez, 30 Cal.4th 643 659
24 (2003)(applying "prison delivery" rule but concluding that the inmate's notice of appeal was
25 delivered to prison officials after the 60-day period had expired).

26 Accordingly, Petitioner's one-year AEDPA period commenced on December 22, 1998
27 and would have expired on December 22, 1999, absent applicable statutory or equitable tolling.
28 Since it is undisputed that Petitioner did not file his federal petition until June 16, 2003, the

petition is untimely unless statutory or equitable tolling makes it timely. See Patterson v. Stewart, 251 F.3d 1243, 1245 (9th Cir. 2001). In order to answer this last question, the Court will address each of the three bases on which Petitioner asserts that the instant petition is timely.

### C. Tolling Pursuant to 28 U.S.C. § 2244(d)(1)(D)

Petitioner first asserts that the one-year period did not commence to run until he received the autopsy report, which was sent by the Public Defender's office on August 30, 2001, and received by Petitioner on September 5, 2001. (Doc. 37, pp. 7-13). He therefore claims he is entitled to tolling under section 2244(d)(1)(D) because he did not discover the autopsy report's finding until that date.

Respondent does not challenge the fact that Petitioner received his trial court file at that time; rather, Respondent maintains that Petitioner already knew of the contents of the autopsy report because his trial attorney had explained this to him before he entered his plea. In support of this point, Respondent relies on the declaration of Karen Block-Davis, Petitioner's trial counsel, which sets forth her recollection of reading the autopsy report, then meeting with Petitioner, and "sharing" the contents of that report with him. (Doc. 28, Exh. 1). Respondent also relies upon an excerpt from the sentencing hearing at which Block-Davis noted to the court that the victim's death was a tragedy "magnified by the fact that he probably didn't have to die, but for complications at the hospital...." (Doc. 29, LD 3, p. 12). Thus, Respondent contends that Petitioner cannot claim relief under section 2244(d)(1)(D) because the information in the autopsy report is not "newly discovered." (Doc. 28, pp. 5-6).

In opposition, Petitioner submits his own declaration in which he declares that at "no time prior to my plea or before I received my file from the public defender's office on September 4, 2001 did Ms. Davis tell me that the victim Mr. Aubrey had died as a result of the hospital's negligence and not as a result of the accident." (Doc. 38, p. 1). Petitioner insists that Davis told him that the victim had died "from complications," a term he assumed meant "complications from the accident, not that the hospital had done something wrong which caused his death." (Id. at p. 2). Petitioner indicates that Davis did not show him the autopsy report, and that most of their conversation prior to entering a change of plea revolved around the security threats to Davis

7

and Petitioner and how a 15-year sentence was a "good deal considering the circumstances." Id.

28 U.S.C. section 2244(d)(1) provides as follows:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of...

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Thus, under section 2244(d)(1)(D), the one-year limitation period starts on the date when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Hasan v. Galaza, 254 F.3d 1150, 1154, fn. 3 (9th Cir. 2001)(*quoting* Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000).  Due diligence does not require "the maximum feasible diligence," but it does require reasonable diligence in the circumstances. Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004)(*quoting* Moore v. Knight, 368 F.3d 936, 940 (7th Cir. 2004); see Wims v. United States, 225 F.3d 186, 190, fn. 4 (2d Cir. 2000).  It is not necessary for a petitioner to understand the legal significance of the facts; rather, the clock starts when a petitioner understands the facts themselves. Hasan, 254 F.3d at 1154 fn. 3; Owens, 235 F.3d at 359 ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognized their legal significance.")  To "have the factual predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have discovered (or with the exercise of due diligence could have discovered) facts suggesting both unreasonable performance and resulting prejudice." Hasan, 254 F.3d at 1154.  In order to claim the benefit of tolling in this case, it is Petitioner's burden to establish it. Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002); Tholmer v. Harrison, 2005 WL 3144089 (E.D.Cal. Nov. 22, 2005), *1; see Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir. 1993)(party seeking tolling bears the burden of alleging facts which would give rise to tolling).

Here, Petitioner's habeas claims of ineffective assistance of counsel, failure by the state court to investigate counsel's performance, and actual innocence, all derive from the information contained in the autopsy report, which states in clear terms that peritonitis, not blunt force head trauma, caused the victim's death.  As both Petitioner and Respondent note, in California,

"inadequate" medical treatment is not a defense to homicide but "grossly improper" medical treatment is a defense. (Doc. 28, p. 8; Doc. 37, p. 5). Moreover, Petitioner points out that when the original injury is not the cause of death, a defendant is not guilty of an unlawful homicide. (Doc. 37, p. 6).

Here, the autopsy report states both that the cause of death *was* peritonitis and that the head trauma resulting from Petitioner's conduct *was not* sufficient to cause death. (Doc. 1, Exh. 4). Thus, the information contained in this autopsy report would indicate that a conviction for second degree murder in California could not be sustained. That trial counsel recommended that Petitioner plead guilty to a second-degree murder conviction that could not be sustained suggests that Petitioner's counsel was ineffective, perhaps due to a constellation of circumstances, including a popular victim; a relatively small community; a high-profile case; Petitioner's high blood-alcohol content at the time of the accident; his prior history of drunk driving; and the death threats made to Davis and Petitioner, which together may have created an atmosphere of intimidation in which Davis failed to represent her unpopular client with the requisite zeal expected when the victim's autopsy report precludes a factual basis for the plea ultimately negotiated.

It is clear from the foregoing, that the autopsy report was the "factual predicate" for three of the petition's claims.[1] Thus, the Court must now look to whether the factual predicate of these claims "could have been discovered through the exercise of due diligence." Hasan, 254 F.3d at 1154. This in turn involves an inquiry into whether (1) Petitioner knew of the contents of the autopsy report at a date prior to September 5, 2001, and (2) if not, whether Petitioner exercised due diligence in obtaining the factual predicate. Id.

///

---

[1] Petitioner's fourth claim, i.e., that the state court failed to conduct an "ability to pay" hearing before imposing a state restitution fine, would not appear to be derived from the information contained in the case file received by Petitioner on September 5, 2001, nor does it appear even to raise a federal question entitling Petitioner to habeas relief. E.g., Estelle v. McGuire, 502 U.S. 62, 67 (1991)("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). Because the parties have chosen to address the possible exceptions to the AEDPA's one-year limitation period as applied to all of Petitioner's claims, and have not distinguished among them, the Court will defer addressing potential pleading defects in the fourth claim in this Order.

1. Petitioner's Knowledge of the Autopsy Report

On the surface, the record now before the Court would appear to have a factual dispute: Respondent claims, through Davis's declaration, that trial counsel discussed the *contents* of the autopsy report with Petitioner at the time of his plea. Petitioner maintains that Davis discussed the autopsy report with him only by saying that it showed the victim died of "complications." Respondent argues that Davis's recollection is, in essence, determinative of this issue, while Petitioner contends that Davis's declaration is entirely consistent with Petitioner's version of events. The Court finds Petitioner's argument persuasive.[2]

First, nowhere in Davis's declaration does she expressly state that she discussed the autopsy's conclusions with Petitioner. Nor does Davis indicate that she showed Petitioner the report itself or that she read its contents to him. Instead, her declaration is ambiguous. Davis declares that she "shared" the contents with Petitioner, without explaining what that term meant in terms of the specific factual allegations at issue in this case. The term "shared" could be interpreted, on the one hand, as showing the actual contents of the report to Petitioner; on the other hand, it could suggest that Davis merely paraphrased or summarized the contents for Petitioner, e.g., telling him that the victim died of "complications." The latter, of course, is Petitioner's recollection of events.

---

[2] In resolving this apparent factual dispute in the record, the Court applies the "preponderance of the evidence" standard. Vineyard v. Dretke, __F.3d __, 2005 WL 2219272 (N.D.Texas Aug. 5, 2005)(petitioner has burden of establishing equitable tolling by a preponderance of the evidence); U.S. v. Marshall, 856 F.2d 896 (7th Cir. 1988)(party seeking tolling must establish entitlement to it by a preponderance of the evidence). Although section 2244(d)(1)(D) is a different basis for relief from the AEDPA's one-year limitation period than equitable tolling, there is no obvious reason why the "preponderance" standard would not apply in this context as well. In applying this evidentiary standard, the Court is mindful of 28 U.S.C. sec. 2254(e)(1), which imposes a "clear and convincing" standard on petitioners seeking to rebut the presumption of correctness afforded a state court factual determination. Here, however, the factual findings before this Court are different from those that were before the state courts. In denying Petitioner's initial state habeas petition, the Tuolumne County Superior Court ruled that Petitioner had failed to raise his claims in a timely fashion and did not show that his delay was justified by "recent discovery of a new legal or factual basis" for his claims. (Doc. 28, Exh. C). The state court, however, was addressing state court questions regarding timeliness and sufficiency to grant a state habeas petition. Here, by contrast, the Court is construing and applying federal law. "[T]he application of equitable tolling is a question of federal law. Our present discussion impacts only [Petitioner's] filing for federal habeas relief, not the timeliness of his petition for state postconviction relief." Kennan v. Bagley, 400 F.3d 417, 420-421 (6th Cir. 2005). Moreover, the evidentiary record now before this Court is distinctly different from that which was before the state courts on collateral review, thus making any effort at giving "deference" to state court findings meaningless. Accordingly, the Court concludes that the appropriate evidentiary standard here is a "preponderance of the evidence," not "clear and convincing evidence."

1    This ambiguity is particularly telling because the Ninth Circuit remanded this case
2 expressly to develop the facts relating to whether Petitioner is entitled to some form of relief
3 from the procedural timeliness bar.  Both parties were acutely aware of this.  Respondent had the
4 opportunity to elicit a declaration from Davis that would have removed any ambiguity about
5 what and how Davis "shared" the contents of the report with Petitioner.  Respondent did not do
6 so.  Moreover, after Petitioner contended in his opposition that Davis had merely told him that
7 the victim died of complications, Respondent had the opportunity to submit a supplemental
8 declaration from Davis clarifying her earlier declaration and foreclosing Petitioner's argument.
9 Again, Respondent did not do so.

10   Because the apparently conflicting evidence can be reconciled by this latter interpretation,
11 the Court finds Petitioner's version of events more persuasive than Respondent's by a
12 preponderance of the evidence.   Supporting this view is the fact that Petitioner evidenced a
13 desire to withdraw his plea from the outset; however, it was not until he received his case file on
14 September 5, 2001, that he began his "round" of state court habeas proceedings.  That Petitioner
15 initiated and proceeded through this round of petitions with such dispatch and efficiency,
16 completing the entire round in approximately eleven months from inception, and did so only after
17 receiving his case file, suggests that information in the file itself was the catalyst and factual
18 predicate that Petitioner required to further his long-standing goal of setting aside his guilty plea.

19   Further supporting Petitioner's version of events is Davis's statement at the sentencing
20 hearing.  Her reference to a tragedy "magnified" by the fact that the victim would not have died
21 but for "complications at the hospital" omits any specific references to the contents of the
22 autopsy report while at the same time directly parroting Petitioner's recollection that Davis only
23 told him that the victim had died from "complications" without telling him the specific findings
24 as to the precise cause of death. Thus, based on all of the evidence in this record, the Court finds
25 that Petitioner did not learn of the specific findings in the autopsy report until September 5, 2001.

26   2. Petitioner's Due Diligence
27   Petitioner indicates that he made several attempts to obtain his trial counsel's files
28 between the time his failed attempts to appeal were rejected and September 5, 2001.  (Doc. 9, p.

11

3; Doc. 38, p. 2). After Petitioner wrote to Davis in July 1999,[3] she replied explaining the circumstances that had resulted in the change of plea. (Doc. 38, Exh. G). Davis does not indicate to Petitioner that he had a right to his own file. (Id.). Subsequently, in August 2001, Petitioner wrote to the public defender's office requesting his file again. After an exchange of letters, his file was received by Petitioner on September 5, 2001. In light of the foregoing, while the Court does not find that Petitioner exhibited the "maximum feasible diligence" in attempting to obtain his file, he nevertheless did exhibit "reasonable diligence in the circumstances." Schlueter, 384 F.3d at 74. Since, as discussed *supra*, the factual predicate for Petitioner's claims were contained in the autopsy report, and since the Court has already found that Petitioner did not discover the factual predicate to the claims in the instant petition until September 5, 2001, when the autopsy report was transmitted to him along with the rest of his case file, Petitioner has satisfied the requirements for invoking section 2244(d)(1)(D). Thus, the one-year period did not commence to run until September 5, 2001. Hasan, 254 F.3d at 1154.

### D.  Equitable Tolling

Petitioner also maintains that the one-year period should be equitably tolled until he received his entire trial court file on September 5, 2001. Respondent does not address this issue.

The limitation period is subject to equitable tolling if "extraordinary circumstances beyond a prisoner's control" have made it impossible for the petition to be filed on time. Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003)(internal quotation marks and citations omitted); Calderon v. United States District Court for the Central District of California (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), *overruled on other grounds* by Calderon v. U.S. District Court (Kelly), 163 F.3d 530 (9th Cir. 1998), itself *overruled on other grounds* by Woodford v. Garceau, 538 U.S. 202 (2003)(noting that "[e]quitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time"). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the

---

[3]A copy of that letter is not in the record; hence, the Court has no knowledge of its contents except for the inferences that can be drawn based on Davis's responsive letter.

statute of limitations may be appropriate." Lott v. Mueller, 304 F.3d 918, 922 (9th Cir. 2002) (quoting Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999)).   In order to win equitable tolling, a prisoner must demonstrate that "extraordinary circumstances beyond [his] control" made it "impossible to file a petition on time." (Beeler), 128 F.3d at 1288.  In Allen v. Lewis, 255 F.3d 798, 801 (9th Cir. 2001), the Ninth Circuit concluded that the petitioner "must show that the 'extraordinary circumstances' were the but-for and proximate cause of his untimeliness." Recently, the Ninth Circuit reaffirmed this rule in Espinoza-Matthews v. California, 432 F.3d 1021, 1026 (9th Cir. 2005).  In that case, the Court pointed out that the determination vis-a-vis equitable tolling is "highly fact-dependent" and that the petitioner "bears the burden of showing that equitable tolling is appropriate." Id.

At the same time, the Ninth Circuit noted the United States Supreme Court's decision in Pace v. DiGuglielmo, 544 U.S. 408, 125 S.Ct. 1807, 1814 (2005), in which the Supreme Court framed the equitable tolling standard "in less absolute terms":

> "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."

Espinoza-Matthews, 432 F.3d at 1026, fn. 5, quoting Pace, 125 S.Ct. at 1814.  The Ninth Circuit declined to decide whether Pace had "lowered the bar somewhat" because the Ninth Circuit concluded that petitioner had met the "more demanding" articulation found in the Ninth Circuit case law. Id. at 1027.

Petitioner claims that extraordinary circumstances prevented him from timely filing his federal petition.  (Doc. 37, p. 13-14).  Specifically, Petitioner refers to the autopsy report contained in his trial court file received on September 5, 2001.  To that extent, there is a significant overlap between the argument Petitioner makes for equitable tolling and his argument for tolling pursuant to section 2244(d)(1)(D).  Having already found that Petitioner did not know of the specific contents of the autopsy report until he received them on September 5, 2001, the same conclusion would necessarily follow regarding equitable tolling.

However, the test for equitable tolling is different from section 2244(d)(1)(D).  As mentioned, to establish equitable tolling a petitioner must show that he has pursued his rights

diligently and that some extraordinary circumstance stood in his way. Espinoza-Matthews, 432 F.3d at 1026, fn. 5. The Court has already considered Petitioner's due diligence in attempting to obtain his case file and has found that Petitioner has exercised reasonable diligence under the circumstances. The remaining question is whether lack of access to his case file is an "extraordinary circumstance" justifying equitable tolling. In the Court's view, it is.

In Lott v. Mueller, the Ninth Circuit concluded that, if established, denying a petitioner access to his legal files during two temporary transfers that lasted 82 days would "appear to satisfy the 'extraordinary circumstances' requirement for equitable tolling." Lott, 304 F.3d at 924. In so holding, the Court noted that a "temporary deprivation of an inmate's legal materials does not, in all cases, rise to a constitutional deprivation." 304 F.3d at 925 (*quoting* Vigliotto v. Terry, 873 F.2d 1201, 1202-1203 (9th Cir. 1989)(ruling that a three day deprivation does not rise to constitutional proportions).

Here, however, Petitioner was denied access to essential information from the conclusion of state court criminal proceedings in December 1998 until the file was delivered to him on September 5, 2001. As in Lott, such a lengthy delay would appear to satisfy the "extraordinary circumstances" requirement for applying equitable tolling.

Thus, because Petitioner has established diligence in pursuing his rights and the existence of extraordinary circumstances preventing the filing of the claims deriving from the actual cause of death, Petitioner is entitled to equitable tolling until September 5, 2001. Pace, 125 S.Ct. at 1814.

E. "Actual Innocence" Under Schlup v. Delo

Neither the Supreme Court nor the Ninth Circuit has expressly held that there is an actual innocence exception to a violation of section 2244(d)'s limitation period. Majoy v. Roe, 296 F.3d 770, 776 (9th Cir. 2002). To date, the Ninth Circuit has only excused a violation of the limitation period in cases where the petitioner was entitled to equitable tolling. See, Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1287-89 (9th Cir. 1997), *overruled on other grounds* by Calderon v. U.S. District Court (Kelly), 163 F.3d 530 (9th Cir. 1998), itself *overruled on other grounds* by Woodford v. Garceau, 538 U.S. 202 (2003)

Under the actual innocence gateway of Schlup v. Delo, 513 U.S. 298, 329 (1995), decided before the enactment of the AEDPA, a petitioner's procedurally barred claim may be considered on the merits if his claim of actual innocence is sufficient to implicate a fundamental miscarriage of justice. See Majoy v. Roe, 296 F.3d at 775-776; Carriger v. Stewart, 132 F.3d 463, 477 (9th Cir. 1997). In order to satisfy Schlup, a petitioner must establish that "in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" Majoy, 296 F.3d at 776 (quoting Schlup, 513 U.S. at 316); Sistrunk v. Aremankis, 292 F.3d 669, 673 (9th Cir. 2002).

In Schlup, the Supreme Court cautioned that to be credible, a claim of actual innocence requires the "petitioner to support his allegations of constitutional error with new reliable evidence...that was not presented at trial." Schlup, 513 U.S. at 324; Majoy, 296 F.3d at 776. In Griffin v. Johnson, 350 F.3d 956, 963 (9th Cir. 2003), the Ninth Circuit held that "habeas petitioners may pass Schlup's test by offering 'newly presented' evidence of actual innocence," rather than having to meet the more difficult "newly discovered" evidence standard. Thus, in Griffin, the Ninth Circuit indicated that it was proper to consider evidence that was in Petitioner's possession prior to trial but never offered prior to accepting his plea bargain. Id. Therefore, the autopsy report in this case, and any other evidence contained in the trial court file that was not "presented" to the state court, would be "newly presented" evidence under Griffin, and thus would satisfy Schlup, *if* such evidence established that it was more likely than not that no reasonable person would have found Petitioner guilty beyond a reasonable doubt, and *if* the Schlup gateway survives the enactment of the AEDPA. Majoy, 296 F.3d at 776.

Adding to the uncertainty on this issue, the Ninth Circuit has not definitively decided whether the "more likely than not" standard in Schlup has been superceded by the "clear and convincing" standard of the AEDPA's section 2254(e)(2), in determining whether a petitioner is entitled to relief. In Majoy, the Ninth Circuit applied Schlup's "more likely than not" standard, and remanded for an evidentiary hearing without reference to section 2254(e)(2). Majoy, 296 F.3d at 776-777. In Sistrunk, decided one month before Majoy, the Ninth Circuit declined to decide whether Schlup survives the AEDPA, including section 2254(e)(2), because the petitioner

did not seek an evidentiary hearing. Sistrunk, 292 F. 3d at 673, fn. 3.  In Jaramillo v. Stewart, 340 F.3d 877, 881-882 (9th Cir. 2003), the Ninth Circuit found that section 2254(e)(2) did not apply to petitioner Jaramillo because he had been "diligent in his attempt to develop the factual basis of his claim." 340 F.3d at 882.   However, these issues remain unresolved.

In light of the unsettled law in this area, and because the Court has already found that two separate statutory bases exist to toll the one-year limitation period here, thus making the petition timely, it is unnecessary for this Court to address the constitutional questions inherent in an "actual innocence" argument.  See Lott, 304 F.3d at 925 (refusing to address question of whether deprivation of inmate's legal materials is of constitutional dimensions until the issue of equitable tolling has been resolved by the district court); Jean v. Nelson, 472 U.S. 846, 854 (1985)("Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision.  This is a fundamental rule of judicial restraint."); United States v. Kaluna, 192 F.3d 1188, 1197 (9th Cir. 1999)(restating the "well-established" maxim that "courts are not 'to decide questions of a constitutional nature unless absolutely necessary to a decision of the case'") (*quoting* Burton v. United States, 196 U.S. 283, 295 (1905)).

F.  Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period. 28 U.S.C. § 2244(d)(2).

In Nino v. Galaza, the Ninth Circuit held that the "statute of limitations is tolled from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge."[4] Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), *cert. denied,* 120 S.Ct. 1846 (2000); see, also, Taylor v. Lee, 186 F.3d 557 (4th Cir. 1999);

---

[4] In California, the Supreme Court, intermediate Courts of Appeal, and Superior Courts all have original habeas corpus jurisdiction. See, Nino, 183 F.3d at 1006, n. 2.  Although a Superior Court order denying habeas corpus relief is non-appealable, a state prisoner may file a new habeas corpus petition in the Court of Appeal. Id.  If the Court of Appeal denies relief, the petitioner may seek review in the California Supreme Court by way of a petition for review, or may instead file an original habeas petition in the Supreme Court.  See, id.

Barnett v. Lemaster, 167 F.3d 1321, 1323 (10th Cir. 1999). The Court reasoned that tolling the limitations period during the time a petitioner is preparing his petition to file at the next appellate level reinforces the need to present all claims to the state courts first and will prevent the premature filing of federal petitions out of concern that the limitation period will end before all claims can be presented to the state supreme court. Id. at 1005. However, the limitations period is not tolled for the time such an application is pending in federal court. Duncan v. Walker, 533 U.S. 167, 181-182 (2001).

Petitioner filed his first collateral action in the Tuolumne County Superior Court on May 9, 2002, approximately three-and-one-half years *after* his judgment became final on December 22, 1998. (Doc. 8, Exh. B). Since a petitioner is not entitled to tolling for the period between finality and the filing of an application for post-conviction or other collateral review in state court, Nino, 183 F.3d at 1006-1007, at the time the Petitioner filed the first state habeas petition, his one-year limitation period would have already expired, unless it was extended by other tolling provisions. If Petitioner's one-year statute had expired, the state collateral action cannot revive it. Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001). Therefore, unless Petitioner is entitled to some form of tolling *until* May 9, 2001, none of Petitioner's collateral challenges would have had any statutory tolling consequences for purposes of the one-year limitation period in the AEDPA. Green v. White, 223 F.3d 1001, 1003 (9th Cir. 2000) (Petitioner is not entitled to tolling where the limitation period has already run prior to filing state habeas proceedings); see Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir.2000)(same); Jackson v. Dormire, 180 F.3d 919, 920 (9th Cir. 1999)(petitioner fails to exhaust claims raised in state habeas corpus filed after expiration of the one-year limitation period.).

Here, as discussed *supra*, the Court finds that Petitioner was entitled to equitable tolling and tolling pursuant to 28 U.S.C. § 2244(d)(1)(D), until September 5, 2001. Thus, the one-year AEDPA period would expire on September 5, 2002. Accordingly, the one-year period had not expired when Petitioner filed his first state habeas proceeding on May 9, 2002. As of that date, Petitioner had used 246 of his 365 days. There being no dispute that each of Petitioner's three state habeas petitions were "properly filed," Petitioner was therefore entitled to statutory tolling

from May 9, 2002, when he filed his collateral action in the superior court, until April 30, 2003, when his habeas petition was denied by the California Supreme Court. (Doc. 8, Exh. G). 28 U.S.C. § 2244(d)(2); Lott v. Mueller, 304 F.3d at 921. Petitioner filed the instant petition on June 16, 2003, 47 days after the denial by the California Supreme Court of his last collateral review in state court. Thus, at the time the instant petition was filed, the total amount of Petitioner's non-tolled time was 293 days. This means that the petition was timely and, accordingly, Respondent's Motion to Dismiss must be denied.

## ORDER

Based on the foregoing, the Court HEREBY ORDERS as follows:

1. Respondent's renewed Motion to Dismiss (Doc. 28), is DENIED; and,

2. Respondent SHALL FILE an ANSWER addressing the merits of the Petitioner's Petition within **NINETY (90)** days of the *date of service* of this order. Rule 4, Rules Governing Section 2254 Cases; Cluchette v. Rushen, 770 F.2d 1469, 1473-1474 (9th Cir. 1985) (court has discretion to fix time for filing an Answer.).

3. Respondent SHALL INCLUDE with the Answer any and all transcripts or other documents necessary for the resolution of the issues presented in the Petitioner's Petition. Rule 5 of the Rules Governing Section 2254 Cases.

4. Any argument by Respondent that Petitioner has procedurally defaulted a claim(s) SHALL BE MADE in an ANSWER that also addresses the merits of the claims asserted. This is to enable the Court to determine whether Petitioner meets an exception to procedural default. See, Paradis v. Arave, 130 F.3d 385, 396 (9th Cir. 1997) (Procedurally defaulted claims may be reviewed on the merits to serve the ends of justice); Jones v. Delo, 56 F.3d 878 (8th Cir. 1995) (the answer to the question that it is more likely than not that no reasonable juror fairly considering all the evidence, including the new evidence, would have found Petitioner guilty beyond a reasonable doubt necessarily requires a review of the merits).

5. Petitioner's TRAVERSE, if any, is due **THIRTY (30)** days from the date Respondent's Answer is filed with the Court.

6. The Clerk of the Court is DIRECTED to SERVE a copy of this order on the Attorney General or his representative.

All motions shall be submitted on the record and briefs filed without oral argument unless otherwise ordered by the Court. Local Rule 78-230(h). All provisions of Local Rule 11-110 are applicable to this order.

IT IS SO ORDERED.

Dated: **March 29, 2006**         **/s/ Theresa A. Goldner**
**j6eb3d**                UNITED STATES MAGISTRATE JUDGE