1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10
11

| | | |
|---|---|---|
| TOMMY RAY WILLIAMS, | ) | 1:03-CV-5819 JMD HC |
| Petitioner, | ) ) ) | ORDER SCHEDULING EVIDENTIARY HEARING |
| v. | ) ) | |
| MIKE KNOWLES, | ) ) | |
| Respondent. | ) ) ) | |

12
13
14
15
16
17

18       Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to

19   28 U.S.C. § 2254.

20       Petitioner filed the instant petition on June 16, 2003.  Petitioner argues, among other things,

21   that, prior to his guilty plea, his trial counsel failed to properly advise him of the contents and legal

22   significance of an autopsy report that found the victim's cause of death to be peritonitis resulting

23   from an improperly placed feeding tube rather than the blunt force head trauma the victim sustained

24   in the accident caused by Petitioner.

25       This claim was presented in a petition for writ of habeas corpus to the Tuolumne County

26   Superior Court, which was denied in a reasoned opinion on September 19, 2002.  (Lodged Doc. 2,

27   Exs. 2-3.)  The issue was then raised in petitions for writ of habeas corpus to the California Court of

28   Appeal and California Supreme Court, which were summarily denied.  (Lodged Doc. 2, Exs. 4-7.)  In

rejecting Petitioner's claim, the Superior Court found that he did not file his petition in a timely fashion or show that the delay was justified by the recent discovery of a new legal or factual basis for his claims. The court reasoned that "the alleged recently discovered evidence concerning the actual cause of death of the victim was in fact not newly discovered and was thoroughly made available to the defendant and the defendant's attorney prior to his entry into a negotiated plea." (Lodged Doc. 2, Ex. 3 at 2.)

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, the petitioner must demonstrate prejudice. When a challenge is made to a guilty plea based on ineffective assistance, the prejudice analysis "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."

1  Id.; see also Roe v. Flores-Ortega, 528 U.S. 470, 486 (2000) (citing *Hill* for the proposition that

2  "when, in connection with a guilty plea, counsel gives deficient advice regarding a potentially valid

3  affirmative defense, the prejudice inquiry depends largely on whether that affirmative defense might

4  have succeeded, leading a rational defendant to insist on going to trial").

5           Deficient performance

6           Petitioner claims that counsel was deficient in failing to advise him of the contents and legal

7  significance of the autopsy report which states that the victim's cause of death was the improper

8  placement of a feeding tube by medical personnel rather than the blunt force trauma to the victim's

9  head sustained during the crash with Petitioner.  Petitioner has submitted a declaration stating that he

10  was not shown the autopsy report prior to his guilty plea and that counsel did not inform him that the

11  victim "died as a result of the hospital's negligence and not as a result of the accident."  (Court Doc.

12  38, Decl. Tommy Ray Williams ¶ 3.)  Petitioner states that counsel told him that the victim had died

13  "from complications" and that he understood her to mean that the victim died in the hospital from

14  complications resulting from the accident, not from the actions of the hospital.  (Id. ¶ 4.)  Petitioner

15  states that he would not have accepted the plea offer if he had known that the victim died as a result

16  of an improperly placed feeding tube.  (Id.)

17           Counsel has also submitted a declaration in which she directly contradicts Petitioner's factual

18  claims.  Counsel states that, prior to Petitioner's guilty plea, she "was extremely clear with Mr.

19  Williams that there was an autopsy report that stated the victim's cause of death was peritonitis due

20  to an improperly placed feeding tube, and that the autopsy report stated that the injuries the victim

21  sustained in the accident did not seem to be severe enough to have caused the death as a primary

22  cause."  (Answer, Ex. A-1, Supp. Decl. Karen Block-Davis ¶ 5-6.)  Counsel states that she explained

23  the report's conclusions to Petitioner in a manner which he appeared to understand and that she then

24  explained the legal issue of causation raised by the autopsy report in a manner that Petitioner seemed

25  to understand.  (Id. ¶ 6-7.)  Counsel further states that she discussed at length with Petitioner the

26  issues that would hurt him at trial and that he mentioned that he did not want to put the victim's

27  daughter through the ordeal of going to court.  (Id. ¶ 9-10.)  Counsel told Petitioner that the case was

28  "very triable" and she was satisfied that he understood the risks of going to trial.  (Id. ¶ 7-8.)

Petitioner and Respondent have submitted other evidence to the Court, however, it is not conclusive on the question of whether Petitioner was made aware of the contents and legal impact of the autopsy report prior to his guilty plea.  For instance, counsel's case notes show that she received and reviewed the autopsy report on August 28, 1998.  (Court Doc. 39, Ex. B at 1.)  The notes show that she subsequently had discussions with Petitioner regarding a potential plea deal and potential outcomes including minimum and maximum sentences.  The case notes, however, do not contain any notations stating that counsel provided Petitioner with a copy of the autopsy report or otherwise informed him of its contents and legal significance.  (Court Doc. 39, Ex. B.)  Similarly, the transcripts of the change of plea hearing and sentencing hearing do not compel or preclude a finding that Petitioner was properly advised regarding the information in the autopsy report.  At the change of plea hearing, when reciting the factual basis for the murder charge, Deputy District Attorney Clancy described the victim's death as follows:

> Mr. Aubrey was admitted to the hospital with [a] serious head injury and also multiple fractures.  He remained in the hospital until July 6th, 1998, on which date Mr. Aubrey died. [¶] The People's evidence would show that the brain injury resulting from this collision was a cause of Mr. Aubrey's death.

(Lodged Doc. 3, RT of Change of Plea Hearing at 11.)  Petitioner's counsel, when asked if she disagreed with Mr. Clancy's statement of what the evidence would show at trial, responded, "No I do not."  (Id. at 13.)  At the sentencing hearing, Petitioner's counsel stated, "The tragedy, of course, is magnified by the fact that he [the victim] probably didn't have to die, that he could have lived, but for complications at the hospital."  (Lodged Doc. 3, Sentencing Transcript at 12.)  Neither the context of counsel's statement nor other statements made at the hearing demonstrate that Petitioner was aware that the "complications" related to the improperly placed feeding tube rather than the blunt force trauma to the victim's head which occurred in the accident.  (See Lodged Doc. 3, Sentencing Transcript.)

Respondent argues that, despite the conflicting declarations and other inconclusive evidence regarding counsel's performance, the Court should find that counsel was not deficient by giving deference to the Superior Court's factual findings under 28 U.S.C. § 2254(e)(1).  (Answer at 8.)  That sections reads:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). The Superior Court, in denying Petitioner's petition for writ of habeas corpus found that "[a] review of the file and of course the content of the Petitioner's own Writ reveals that the alleged recently discovered evidence concerning the actual cause of death of the victim was in fact not newly discovered and was thoroughly made available to the defendant and the defendant's attorney prior to his entry into a negotiated plea." (Lodged Doc. 2, Ex. 3 at 2.) The question here, however, is whether counsel properly explained the legal ramifications of the findings in the autopsy report to Petitioner so that he could make an informed plea, not whether the report was "made available" to Petitioner or his counsel prior to entry of the guilty plea. The Superior Court made no factual findings as to whether counsel properly advised Petitioner. Therefore, to the extent deference is due to the Superior Court's findings under section 2254, it does not compel a finding that counsel provided effective assistance.

As Petitioner has made at least a colorable claim that counsel was deficient in failing to advise him of the significance of the autopsy report, and because the state courts have not reliably found the relevant facts, the Court must consider whether Petitioner can establish prejudice. Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001) ("A habeas petitioner is entitled to an evidentiary hearing if: (1) the allegations in his petition would, if proved, entitle him to relief; and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts."); see also Earp v. Ornoski, 431 F.3d 1158, 1167 (9th Cir. 2005) ("[W]here the petitioner establishes a colorable claim for relief and has never been afforded a state or federal hearing on this claim, we must remand to the district court for an evidentiary hearing.").

Prejudice

As stated above, to show prejudice, Petitioner must demonstrate that a defense based on the facts disclosed in the autopsy report would have likely succeeded at trial, resulting in a rational defendant insisting on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Roe v. Flores-Ortega, 528 U.S. 470, 486 (2000). To determine whether such a defense was likely to

1    succeed, the Court must examine the applicable California law.

2         "If a person inflicts a dangerous wound on another, it is ordinarily no defense that inadequate

3    medical treatment contributed to the victim's death."  People v. Roberts, 2 Cal.4th 271, 312 (1992).

4    However, "when medical treatment is grossly improper, it may discharge liability for homicide if the

5    maltreatment is the sole cause of death and hence an unforeseeable intervening cause."  Id.  Mere

6    medical negligence, in contrast, "is no defense even though it is the sole cause of death because it is

7    a foreseeable intervening cause."  People v. McGee, 31 Cal.2d 229, 240 (1948).

8         The two issues, therefore, on which the success of a lack of causation defense turn are 1)

9    whether the hospital's failure to properly place the feeding tube was the sole cause of the victim's

10   death; and 2) whether the hospital's treatment of the victim, including the placement of the tube,

11   constituted gross or mere medical negligence.  See 50 A.L.R.5th 467 ("The courts have recognized a

12   defense to a charge of homicide only when the treating physician has acted in a grossly negligent

13   manner and that gross medical negligence was the sole cause of the victim's death.").

14        Petitioner argues that "[i]t is uncontroverted that [his] actions were not the cause of the

15   victim's death," as the autopsy report states that the death was solely the result of peritonitis from an

16   improperly placed feeding tube.  (Traverse at 13.)  The analysis in the autopsy report reads in full as

17   follows:

18        OPINION: The death of this 32-year-old male is attributed to peritonitis resulting
          from an improperly placed feeding tube.  The deceased reportedly pulled out an
19        existing enterogastric feeding tube two days after it was placed.  A new tube (Foley
          catheter) was advanced through the existing skin incision in an attempt to regain
20        accessibility to the stomach.  Since the tract was not well healed (scarred) the tube did
          not enter the lumen of the stomach but instead was free-floating within the abdominal
21        cavity.  Enterogastric tube feeding in this case was necessitated by neurologic
          impairment following blunt force head injury.  The deceased was the driver of a
22        motorcycle which was struck by an automobile.  Blunt force head trauma, while
          significant, would not seem to be severe enough to lead to death as a primary cause.
23        The accident occurred 21 days prior to death.  The results of toxicologic testing reflect
          negative blood Ethyl Alcohol levels at the time of the accident, since tests were
24        performed on blood taken from the subdural hematoma (blood clot).

25   (Petition, Ex. 4.)  Petitioner contends that these findings have "never been challenged" and that

26   "[t]here is no evidence that death resulted from anything other than peritonitis."  (Traverse at 13.)  In

27   support of his argument, Petitioner cites to CALJIC 8.57 which reads as follows:

28

1

2          Where the original injury is a cause of the death, the fact that the immediate cause of death
          was the medical or surgical treatment administered or that the treatment was a factor
3          contributing to the cause of death will not relieve the person who inflicted the original injury
          from responsibility.  [¶]  Where, however, the original injury is not a cause of the death and
4          the death was caused by medical or surgical treatment or some other cause, then the
          defendant is not guilty of an unlawful homicide.

5    CALJIC 8.57.

6          Petitioner's argument, however, overlooks the fact that the definition of "cause" as used in

7    murder cases is broader than the concept of "cause" as used in the autopsy report.  See CALJIC 3.40

8    ("The criminal law has its own particular way of defining cause.")  "In homicide cases, a 'cause of

9    the death of [the decedent] is an act or omission that sets in motion a chain of events that produces as

10   a direct, natural and probable consequence of the act or omission the death of [the decedent] and

11   without which the death would not occur.'"  People v. Cervantes, 26 Cal.4th 860, 866, (2001), citing

12   CALJIC 3.40; see also CALJIC 3.41 (stating that a person's conduct is a concurrent cause if the

13   conduct was a substantial factor contributing to the result).  Therefore, despite the conclusions in the

14   autopsy report that the blunt force head trauma was insufficient on its own to cause death and that

15   peritonitis from the improper placement of the feeding tube was the sole cause of death, a jury still

16   could have found that Petitioner, in causing the accident, was a cause of the victim's death as he set

17   in motion a chain of events that resulted in the improper tube feeding and the victim's ultimate death.

18   See Petition, Ex. 4 ("Enterogastric tube feeding in this case was necessitated by neurologic

19   impairment following blunt force head injury.");  People v. Dilworth, 274 Cal.App.2d 27, 33 (1969)

20   (stating that shooter would not be absolved of murder liability, even assuming that it was the

21   negligence of the operating surgeon that ruptured the victim's vena cava causing death, because

22   gunshot wound was proximate cause of the emergency operation);  People v. Lewis, 124 Cal. 551,

23   555 (Cal. 1899) (stating that shooter could be held responsible for homicide, even if the sole cause of

24   death was the victim's subsequent, self-inflicted knife wound, if the jury found that the knife wound

25   resulted from the shooting in the natural course of events);  see also Davis v. State, 520 N.W.2d 319,

26   320-23 (Iowa App. 1994) (finding stab wound to be a proximate cause of death, despite the fact the

27   victim died from peritonitis resulting from an improperly placed feeding tube, because "[t]he use of a

28   feeding tube was necessitated by the vegetative condition resulting from lack of oxygen to the brain

1 caused by the stab wound to the heart").

2     The jury, however, in making the proximate cause determination, would have also had to

3 consider whether the hospital's improper placement of the feeding tube constituted a supervening

4 cause which acted to break the chain of causation between Petitioner's actions and the victim's

5 death.  See People v. Fiu, 2008 WL 2878330, *3 (Cal. App. 2008).  To establish that the hospital's

6 actions were a supervening cause, Petitioner must show that the medical treatment was grossly

7 improper rather than merely negligent.  People v. Morse, 2 Cal.App.4th 620, 669-71 (1992); People

8 v. Roberts, 2 Cal.4th 271, 311-13 (1992).

9     The only argument made on this point is Petitioner's claim that, "[t]he inquiry about whether

10 the medical treatment was 'grossly improper' versus 'merely inadequate' is answered by Dr.

11 Vertes'[s] identification of the improper placement of the feeding tube as the only cause of Mr.

12 Aubrey's death 21 days following the accident."  (Traverse at 13.)  This conclusion, however, does

13 not establish whether the hospital's improper placement of the feeding tube was merely a negligent

14 act done in the normal course of treating the victim's injuries or whether it was grossly improper

15 such that it would be an unforeseeable result of the accident.  For instance, Dr. Vertes does not

16 express an opinion as to whether the use of a feeding tube was necessary or reasonable under the

17 circumstances, how or why the feeding tube was improperly placed, or whether the mistake could

18 have reasonably been discovered and corrected or prevented entirely.  Neither Petitioner nor

19 Respondent has otherwise presented expert opinion or other evidence relevant to this inquiry.

20     On the existing record, the Court is not in a position to determine whether the hospital's

21 actions were grossly negligent under the circumstances and, hence, whether Petitioner would have

22 likely succeeded at trial by asserting a lack of causation defense.  As such, and because Petitioner has

23 made a colorable claim of deficient performance, the Court will conduct an evidentiary hearing

24 regarding Petitioner's claim that counsel was ineffective in failing to advise him of the contents and

25 legal significance of the autopsy report prior to his guilty plea.  Rule 8(a) of the Rules Governing

26 Section 2254 Cases; Townsend v. Sain, 372 U.S. 293, 313, 318 (1963).

27

28

1        For the foregoing reasons, the Court HEREBY ORDERS that an evidentiary hearing is set for

2   **April 29, 2009, at 8:45 a.m., before the undersigned**.

3

4   IT IS SO ORDERED.

5   **Dated:    August 5, 2008**                    **/s/ John M. Dixon**
    9f4gk8                                          UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28