1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

### EASTERN DISTRICT OF CALIFORNIA

9

10

11

12

13

14

| | |
|---|---|
| TOMMY RAY WILLIAMS,<br><br>          Petitioner,<br><br>  v.<br><br>MIKE KNOWLES,<br><br>          Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:03-CV-5819 JMD HC<br><br>ORDER GRANTING MOTION TO DISMISS<br>PETITION FOR WRIT OF HABEAS<br>CORPUS |

15

16

17

18

19

20

     Petitioner Tommy Ray Williams ("Petitioner") is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He is represented in this action by counsel. This case is before the undersigned pursuant to consent of the parties.  (Doc. 3, 7); <u>See</u> 28 U.S.C. § 636.  Respondent has renewed its motion to dismiss on the ground that this action is untimely.  For the reasons explained, the petition is untimely and Respondent's motion must be granted.

### PROCEDURAL HISTORY

21

22

23

24

25

26

     Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Tuolumne County Superior Court.  The court imposed an indeterminate prison term of fifteen years to life for second degree murder (Cal. Penal Code § 187) and a concurrent term of three years for driving under the influence causing injury (Cal. Vehicle Code § 23153(a)).  <u>See</u> 2003 Respondent's Motion to Dismiss ("Resp't Motion"), (Doc. 8, Exh. A).

27

28

     On May 9, 2002, Petitioner filed a petition for writ of habeas corpus in the Tuolumne County Superior Court.  <u>See</u> Resp't Motion, (Doc. 8, Exh. B). This petition appears to raise four grounds for

1    relief:  (1) ineffective assistance of trial counsel in that counsel, because of fear for her own safety

2    and intimidation resulting from the local publicity, pressured Petitioner to accept a guilty plea rather

3    than go to trial; (2) newly discovered evidence, i.e., an autopsy report of the victim indicating that

4    peritonitis from an improperly placed feeding tube, not blunt head trauma resulting from the collision

5    with Petitioner's vehicle, caused the victim's death; (3) failure of the trial court to sua sponte inquire

6    into the effectiveness of counsel once the court was advised of threats against counsel and Petitioner;

7    and (4) error in imposing a restitution fine without conducting a hearing on Petitioner's ability to

8    pay.[1] Id.  On September 19, 2002, the Superior Court denied the petition.  See Resp't Motion, (Doc.

9    8, Exh. C).

10        On October 3, 2002, Petitioner filed a petition for writ of habeas corpus in the California

11   Court of Appeal. See Resp't Motion, (Doc. 8, Exh. D). On November 14, 2002, the court summarily

12   denied the petition.  See Resp't Motion, (Doc. 8, Exh. E).

13        On December 10, 2002, Petitioner filed a petition for writ of habeas corpus in the California

14   Supreme Court.  See Resp't Motion, (Doc. 8, Exh. F).  On April 30, 2003, the court summarily

15   denied the petition.  See Resp't Motion, (Doc. 8, Exh. G).

16        Petitioner filed the instant petition before this Court on June 16, 2003. See Petition, (Doc. 1).

17   Appended to the petition are the same legal briefs and arguments Petitioner raised in each of his

18   three state court habeas petitions.  Id.  On December 3, 2003, the Court granted Respondent's motion

19   to dismiss the petition as untimely.  (Doc. 11).  Petitioner appealed the Court's order of dismissal to

20   the Ninth Circuit Court of Appeals on December 29, 2003.  (Doc. 13).

21        On October 26, 2004, the Court of Appeals vacated the Court's order of dismissal and

22   remanded the case "for further factual development, and if determined appropriate by the District

23   Court, an evidentiary hearing to determine (1) whether Petitioner satisfied the actual innocence test

24   set forth in Schlup v. Delo, 513 U.S. 298 (1995); (2) whether the statute of limitations began to run

25

26        [1] Petitioner's fourth claim, i.e., that the state court failed to conduct an "ability to pay" hearing before imposing a
     state restitution fine, is not derived from the information contained in the case file received by Petitioner on September 5,

27   2001, nor does it appear to raise a federal question entitling Petitioner to habeas relief.  See Estelle v. McGuire, 502 U.S. 62,
     67 (1991)("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

28   The parties have chosen to address the possible exceptions to the AEDPA's one-year limitation period without distinguishing
     among the claims.

1    on August 30, 2001, the date Petitioner discovered the factual predicate for his claims; and (3)

2    whether the statute of limitations should be equitably tolled until August 30, 2001." (Doc. 23).

3         Respondent filed a renewed Motion to Dismiss on April 18, 2005, asserting once again that

4    the petition was untimely.  (Doc. 28).  On September 27, 2005, Petitioner's counsel filed an

5    Opposition to Respondent's Motion, supported, inter alia, by a Declaration from Petitioner, prison

6    mail logs, and the case log of trial counsel.  (Doc. 37).

7         The parties' briefs and supporting affidavits concerning Respondent's renewed Motion to

8    Dismiss created a factual dispute regarding the critical question of when Petitioner discovered the

9    contents of the victim's autopsy report.  (Doc. 40 at 10).  After reviewing the evidence, the Court

10   accepted, under a preponderance of the evidence standard, Petitioner's representation that his counsel

11   did not inform him of the specific contents of the autopsy report.  Id. at 11.

12        Based on the Court's finding that Petitioner did not discover the contents of the autopsy

13   report until September of 2001, the Court found Petitioner had satisfied the requirements for

14   invoking section 2244(d)(1)(D) and the one-year period did not commence to run until September 5,

15   2001.  (Doc. 40 at 12).  Alternatively, the Court found that Petitioner was entitled to equitable tolling

16   because, without knowledge of the autopsy report's contents, his inability to obtain his public

17   defender file which included this report– constituted an "extraordinary circumstance" preventing

18   Petitioner from filing his claim.  (Doc. 40 at 14).  The Court denied Respondent's renewed motion to

19   dismiss.  (Doc. 40).

20        Respondent filed a motion of reconsideration of the Court's order denying the Motion to

21   Dismiss on April 7, 2006.  (Doc. 41).  The Court denied Respondent's motion for reconsideration on

22   July 19, 2006.  (Doc. 43).

23        Respondent filed an answer to the petition on October 19, 2006.  (Doc. 45).  Petitioner filed a

24   traverse on December 20, 2006.  (Doc. 48).

25        On August 6, 2008, the Court ordered an evidentiary hearing in order to receive evidence on

26   Petitioner's ineffective assistance of counsel claim.  (Doc. 51).  The Court conducted the evidentiary

27   hearing on April 29, 2009.

28        Petitioner filed a post-evidentiary hearing brief on July 27, 2009.  (Doc. 64).  Respondent

1   filed its post-evidentiary hearing brief on September 16, 2009.  (Doc. 69).  In its post-evidentiary

2   brief, Respondent renewed its motion to dismiss based on its statute of limitations defense.  (Doc. 69

3   at 9-11).

4          At the April 29, 2009 hearing, Petitioner revealed that, contrary to earlier statements made in

5   his sworn affidavit, Petitioner's counsel had discussed the specific contents of the autopsy report

6   with him before he entered his plea.  See Transcript at 11.  In light of this factual development, on

7   March 3, 2010, the Court directed the parties to provide further briefing on whether Petitioner was

8   either entitled to tolling or excused from the statute of limitations and advised the parties of its

9   intention to reconsider the issue.  (Doc. 70).  Petitioner filed his supplemental brief on April 22, 2010

10  and maintained that Petitioner had not "learned of the factual predicate for his claim . . . until he

11  received his client file" on September 4, 2001 so that "[u]nder the principles of equitable and

12  statutory tolling, Mr. William's Petition was timely filed . . . ."  (Doc. 73 at 4, 6).  Respondent filed

13  its supplemental briefing on June 17, 2010 which again renewed its earlier motion to dismiss

14  contending that Petitioner had:  (1) failed to show "newly discovered evidence" necessary for tolling

15  provided under section 2244(d)(1)(d); and (2) failed to demonstrate "extraordinary circumstances"

16  required to justify equitable tolling.[2]  (Doc. 77).

17                                  **FACTUAL BACKGROUND**

18         In June of 1998, Petitioner was driving under the influence of alcohol when his vehicle struck

19  a motorcycle being ridden by the victim.  See Transcript at 31; 54.  The victim was taken to the

20  hospital and underwent surgery.  Id. at 55.  After surgery, hospital staff placed a feeding tube in the

21  victim improperly, causing an infection which ultimately led to the victim's death.  Id.  The victim's

22  autopsy report states that the victim's death was "attributed to peritonitis resulting from an

23  improperly placed feeding tube . . . blunt force head trauma, while significant, would not seem to be

24  sever enough to lead to death as a primary cause."  (Doc. 38, Ex. H).  On October 1, 1998, Petitioner

25  entered a plea of guilty to one count of second degree murder and one count of driving under the

26  _____

27         [2] As directed by the Court, both Petitioner and Respondent also addressed whether Petitioner had satisfied the "actual innocence" test set forth in Schlup v. Delo, 513 U.S. 298 (1995).  However, in Lee v. Lampert, 610 F.3d 1125, 1128-1131

28  (9th Cir. 2010), the Ninth Circuit held there is no "actual innocence" exception to the AEDPA's one-year limitation period.

1  influence of alcohol or drugs causing injury.  Petitioner contends his plea was tainted by his defense

2  counsel's constitutionally ineffective assistance.  Specifically, Petitioner contends that his attorney

3  (Ms. Karen Davis) did not advise him of the contents of the autopsy report and did not adequately

4  advise Petitioner regarding his potential defense to the crime of second degree murder.[3]

5  **DISCUSSION**

6  **I.      Limitation Period for Filing a Petition for Writ of Habeas Corpus**

7          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

8  1996 (AEDPA).  The AEDPA imposes various requirements on all petitions for writ of habeas

9  corpus filed after the date of its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v.

10 Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), cert. denied, 118 S.Ct. 586 (1997). The

11 original petition in this case was filed on June 16, 2003 (Doc. 1), and thus, it is subject to the

12 provisions of the AEDPA.

13         The AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal

14 petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, section 2244, subdivision

15 (d) reads:

16            (1) A 1-year period of limitation shall apply to an application for a writ of habeas
             corpus by a person in custody pursuant to the judgment of a State court. The
17           limitation period shall run from the latest of--

18                (A) the date on which the judgment became final by the conclusion of direct
             review or the expiration of the time for seeking such review;
19
                  (B) the date on which the impediment to filing an application created by State
20           action in violation of the Constitution or laws of the United States is removed, if the
             applicant was prevented from filing by such State action;
21
                  (C) the date on which the constitutional right asserted was initially recognized
22                                                                                          by
             the Supreme Court, if the right has been newly recognized by the Supreme Court and
23           made retroactively applicable to cases on collateral review; or

24 ─────────────────────

25         [3]The Court notes the deficiencies in Ms. Davis' representation raised by Petitioner's ineffective assistance claim.
   In People v. Roberts, 2 Cal.4th 271, 312, (1992), the California Supreme Court held that "when medical treatment is grossly
26 improper, it may discharge liability for homicide if the maltreatment is the sole cause of death and hence an unforeseeable
   intervening cause."  Id. at 312.  When Petitioner's trial counsel was asked how this potential defense would be presented to
27 the jury, she indicated that she had not researched the specifics of the defense because her focus was on the plea agreement.
   See Transcript at 101-102.  Additionally, Ms. Davis indicated that she would not have "changed her presentation of [this]
28 possible defense [to Petitioner] even if she had been provided a medical expert's opinion that stated the hospital had
   'committed gross negligence.'"  See Transcript at 111.

1

2
   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

3

4
   (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

5
28 U.S.C. § 2244(d).

6
   In this case, Petitioner was convicted on October 1, 1998 and sentenced on October 23,

7
1998.  See Resp't Motion (Doc. 8, Exh. A).  It is uncontested that Petitioner did not challenge his

8
conviction or sentence on direct appeal.  See Petitioner's Supplemental Brief (Doc. 73 at p. 5).

9
Therefore the one-year statute commenced to run 60 days later, i.e., on December 22, 1998 and

10
Petitioner's one year AEDPA period expired on December 22, 1999.  Since it is undisputed that

11
Petitioner did not file his federal petition until June 16, 2003, the petition is untimely unless statutory

12
or equitable tolling makes it timely.  See Patterson v. Stewart, 251 F.3d 1243, 1245 (9th Cir. 2001).

13
As discussed below, the Court finds that neither statutory or equitable tolling appropriate.

14
   **A.**  **Tolling Pursuant to 28 U.S.C. § 2244(d)(1)(D)**

15
   Following the evidentiary hearing, Petitioner maintains that the one-year period did not

16
commence to run until he received the autopsy report, which was sent by the Public Defender's

17
office on August 30, 2001, and received by Petitioner on September 5, 2001.  See Petitioner's

18
Supplemental Brief, (Doc. 73 at 1).  More specifically he claims he is entitled to tolling under section

19
2244(d)(1)(D) because he did not discover the autopsy report's finding and contents until that date.

20
Once again, Respondent does not challenge the fact that Petitioner received his trial court file at that

21
time; rather, Respondent maintains that Petitioner already knew of the contents of the autopsy report

22
because his trial attorney had explained this to him before he entered his plea.

23
   28 U.S.C. section 2244(d)(1) provides as follows:

24

25
   (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of . . .

26

27
   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28
   Thus, under section 2244(d)(1)(D), the one-year limitation period starts on the date when "the

factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Hasan v. Galaza, 254 F.3d 1150, 1154, fn. 3 (9th Cir. 2001) (quoting Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000). Due diligence does not require "the maximum feasible diligence," but it does require reasonable diligence in the circumstances. Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004) (quoting Moore v. Knight, 368 F.3d 936, 940 (7th Cir. 2004); see Wims v. United States, 225 F.3d 186, 190, fn. 4 (2d Cir. 2000).

It is not necessary for a petitioner to understand the legal significance of the facts; rather, the clock starts when a petitioner understands the facts which constitute reasonable grounds for asserting all elements of a claim in good faith. Hasan, 254 F.3d at 1154 fn. 3; Owens, 235 F.3d at 359 ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognized their legal significance."); see also Ramirez v. Carter, 174 Fed.Appx. 415, 416 (9th Cir. 2006) (reviewing case where Petitioner was aware of potential witnesses but failed to investigate their specific statements, and stating that Petitioner had "not explain[ed] why he could not have obtained this evidence years before."); see also Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir. 1998) (stating "Section 2244(d)(1)(D) does not convey a statutory right to an extended delay, . . . while a habeas petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim."). In order to claim the benefit of tolling in this case, it is Petitioner's burden to establish it. Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002).

In the Court's order of March 29, 2006, denying Respondent's previous motion to dismiss, this Court accepted under a preponderance of evidence standard, that based on Petitioner's sworn statements, his counsel had not informed him of the specific contents of the autopsy report. (Doc. 40 at 11.) Petitioner had previously stated:

> At no time prior to my plea or before I received my file from the public defender's office on September 4, 2001 did Ms. Davis tell me that the victim Mr. Aubrey had died as a result of the hospital's negligence and not as a result of the accident. I was never shown a copy of the autopsy report or **given a description of its contents**.
> ¶
> I accepted this [plea] offer not knowing that the accident had caused the death of Mr. Aubrey **or that he had died as a result of an improperly placed feeding tube**.

See Petitioner's Declaration in support of Opposition to Renewed Motion to Dismiss, (Doc. 38 at 1-2) (emphasis added).

1    However, at the evidentiary hearing, Petitioner's testimony contradicted this earlier statement

2    as he testified his counsel had in fact discussed relevant parts of the contents of the autopsy report

3    with him before he had entered his plea.  At hearing, Petitioner initially responded to his Counsel's

4    (Ms. Phillip's) questions regarding whether Ms. Davis had informed Petitioner about the existence of

5    an autopsy report as follows:

6            MS. PHILLIPS:  Okay.  Did she at any time tell you that here was an autopsy report?

7            PETITIONER:  I believe she did mention something about one.

8            MS. PHILLIPS:  Okay.  Were you told by Ms. Davis that Mr. Aubrey had died as a
             result of something other than the car accident?

9
             PETITIONER: Well, it was to my understanding it was just the complications in the
10           hospital.  No.

11   See Transcript at 7-8.

12           Later when asked whether Ms. Davis had explained any of the particulars about the

13   circumstances of Mr. Aubrey's death, Petitioner responded:

14           Well, she did ask me at one time when she was – came to see me, she was telling me
             about – she asked me if I knew what the word "peritonitis" was and I said no, and she
15           told me, you know, **it's a blood infection, and evidently during his treatments he
             had pulled out an existing feeding tube, and then when they reinserted**, and I
16           guess there was complications later on, you know, and Mr. Aubrey had died.

17   See Transcript at 11 (emphasis added).

18           Ms. Davis' testimony at hearing regarding her discussion of the autopsy report with Petitioner

19   also contradicted Petitioner's previous sworn statements.  In discussing whether she had shown the

20   report to Petitioner Ms. Davis stated:

21           MR. RILEY:  Did you show the autopsy report to Mr. Williams?

22           MS. DAVIS:  Yes.

23           MR. RILEY:  Did you pass the autopsy report through the slit under the window to
             Mr. Williams?

24
             MS. DAVIS:  I'm pretty sure that I would have done that to show it to him, then have
25           him pass back to me, and then read it to him and go over it with him, you know,
             section by section of what I considered to be the relevant parts.

26
             MR. RILEY:  Lets go to the relevant parts of the – so he held it in his hands?
27
             MS. DAVIS:  To the best of my recollection, he would have had the opportunity to
28           look at it.  I couldn't give him a copy of it.  Our office policy was that they were not
             allowed to have police reports or any documentation from the file, unless we were

1    relieved by the court as their attorney . . .

2    MR. RILEY:  At the very least he saw a copy of this autopsy report through the window?

3

4    MS. DAVIS:  Absolutely.

     See Transcript at 63.

5
         Attempting to discredit Ms. Davis' testimony, Petitioner contends that Ms. Davis initially
6
     testified she was only "pretty sure" she read the autopsy report to Petitioner and that her later more
7
     certain testimony on re-direct regarding what she had disclosed to Petitioner was contradicted by her
8
     earlier equivocal testimony.  See Petitioner's Post Hearing Brief, (Doc. 64 at 5).  Additionally,
9
     Petitioner argues that the absence of any notes of this discussion disclosing the contents of the
10
     autopsy report in Ms. Davis' case logs further supports his contentions that he was not informed of
11
     the contents of the report.  Id. at 4.  Petitioner's contentions are unavailing.
12
         Even assuming arguendo that Ms. Davis' testimony lacked credibility, Petitioner has failed to
13
     explain his apparent change in position evidenced by his own testimony.  "[T]o have the factual
14
     predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have
15
     discovered (or with the exercise of due diligence could have discovered) facts suggesting both
16
     unreasonable performance and resulting prejudice."  Hasan, 254 F.3d at 1154 (italics in original).
17
     Here, dispelling any previous ambiguity, Petitioner's testimony indicated he was aware of the
18
     contents of the autopsy report prior to the trial court entering its judgement on October 23, 1998.
19
     However, Petitioner does not explain why, once armed with these facts, he could not have
20
     additionally determined any insufficient performance by his trial counsel and the prejudice therefrom
21
     before the limitations period expired.  Moreover, given his testimony, Petitioner has failed to
22
     demonstrate any "newly discovered" evidence once he obtained receipt of his file in September of
23
     2001.
24
         In Hasan, the petitioner alleged that his trial counsel, aware of potential juror tampering,
25
     failed to seek a continuance to investigate.  Hasan, 254 F.3d at 1152-53.  Had he investigated,
26
     counsel would have discovered that a juror was in a long-term romantic relationship with one of the
27
     prosecution's witnesses.  Id.  The petitioner did not discover the relationship until many years after
28
     trial.  Id.  At that point, the petitioner had grounds to assert prejudice from his attorney's failure to

1  investigate that he had not had previously.  Id. at 1154.  The facts of this case are distinguishable

2  from Hasan because Petitioner alleges no facts essential to his ineffective assistance claim which he

3  was not already aware of well before the limitations period ended.  Accordingly, Petitioner is not

4  entitled to a later limitations period start-date based on newly-discovered evidence.

5          **B.      Equitable Tolling**

6          Petitioner also maintains that the one-year period should be equitably tolled until he

7  received his entire trial court file on September 5, 2001.  See Petitioner's Supplemental Brief, (Doc.

8  73 at 1-3).

9          The one-year limitation period of § 2244 is subject to equitable tolling where the petitioner

10  has been diligent, and extraordinary circumstances have prevented the petitioner from filing a timely

11  petition.  Holland v. Florida, --- U.S. ----, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010). "[T]he

12  threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions

13  swallow the rule."  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (quoting Miranda v. Castro,

14  292 F.3d 1063, 1066 (9th Cir. 2002)).

15          Equitable tolling is available only when "extraordinary circumstances beyond a prisoner's

16  control make it impossible to file the petition on time."  Stillman v. LaMarque, 319 F.3d 1199, 1202

17  (9th Cir. 2003). "Extraordinary circumstances exist when . . . wrongful conduct prevents a prisoner

18  from filing." Id. (internal quotation marks omitted).  Equitable tolling has been applied, for example,

19  where the prison library was inadequate, Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000)

20  (en banc); where the prisoner was denied access to his files, Lott v. Mueller, 304 F.3d 918, 925 (9th

21  Cir.2002); and where an attorney's egregious misconduct prevented timely filing, Spitsyn v. Moore,

22  345 F.3d 796, 801 (9th Cir. 2003); see Calderon v. United States Dist. Court, 163 F.3d 530 (9th

23  Cir.1998) (en banc) (petitioner entitled to equitable tolling where petitioner's counsel withdrew and

24  left replacement counsel with unusable work product that made timely filing impossible).

25          Petitioner claims that the delay encountered in receiving the autopsy report contained in his

26  file warrants this Court's equitable tolling of the limitations period.  See Petitioner's Supplemental

27  Brief (Doc 73 at 1-4).  However, in each of the cases in which equitable tolling has been applied the

28  alleged wrongful conduct actually prevented the prisoner from preparing or filing a timely petition.

1  Here given Petitioner's admitted knowledge of the report's contents, the Court finds that any delay in

2  receiving the file does not explain Petitioner's delay in filing.  Though lack of access to legal

3  materials may be a sufficient basis for equitable tolling, such is not the case here.[4]  All of the grounds

4  which formed the basis of his claims were known to Petitioner at the time that he entered his plea.

5  Petitioner provides no acceptable explanation for why he waited over two years from the date his

6  conviction became final to file his first state post-conviction habeas petition.[5]  Because Petitioner has

7  failed to show "some extraordinary circumstance that stood in his way," the Court concludes

8  Petitioner is not entitled to equitable tolling.  See Espinoza-Matthews, 432 F.3d 1021 1026, n. 5 (9th

9  Cir. 2005).

10       As discussed above, Petitioner is not entitled to a later limitations start-date under either

11  section 2244(d)(1)(D) or as the result of equitable tolling.  Thus the Court finds the one-year AEDPA

12  period commenced on December 22, 1998 and expired on December 22, 1999, well before Petitioner

13  filed his first state petition on May 9, 2002.  As a result, Petitioner is also not entitled to statutory

14  tolling on the basis of any petitions filed in state court.  See Green v. White, 223 F.3d 1001, 1003

15  (9th Cir. 2000) (holding a petitioner is not entitled to tolling where the limitations period has already

16  run before a state habeas petitioner is filed); accord Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir.

17  2001).  Accordingly the petition must be dismissed as untimely.

18

19

20       [4]The instant case is distinguishable from those cases finding the denial of access to legal materials warranted

21  equitable tolling.  See Espinoza-Matthews v. California, 432 F.3d 1021 (9th Cir. 2005); see also Lott v. Mueller, 304 F.3d
918 (9th Cir. 2002).  In Espinoza-Matthews, the petitioner was placed in Administrative Segregation for his own protection

22  and denied access to his legal files for nearly a year.  Espinoza-Matthews at 1023, 1027.  In Lott, the Ninth Circuit concluded
that, if established, denying a prisoner access to his legal files during two temporary transfers which lasted eight-day days

23  would "appear to satisfy the 'extraordinary circumstances' requirement for equitable tolling."  However here, Petitioner does
not argue complete access to his working legal files was interrupted.  Instead he contends he was not made aware of the

24  contents of an autopsy report, (located in his files), a contention which (as discussed above) is controverted by Petitioner's
testimony.

25       [5]The Court's decision should not be read as precluding circumstances where an attorney's bad advice in combination

26  with other factors, such as a delay in receiving the defendant's court file, might yield the "extraordinary" impediment needed
to support equitable tolling.  See Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (per curiam) (finding equitable

27  tolling determinations "highly fact-dependent"); see also Spitsyn v. Moore, 345 F.3d 796, 801 (9th Cir. 2003) (holding "where
an attorney's misconduct is sufficiently egregious, it may constitute an 'extraordinary circumstance' warranting equitable

28  tolling of AEDPA's statute of limitations); but see Jurado v. Burt, 337 F.3d 638 (6th Cir. 2003) (refusing to apply the doctrine
of equitable tolling when the reason for a late filing was bad advice from an attorney).  However, in light of the above analysis
the required extraordinary circumstance simply did not exist.

1

**CONCLUSION**

2          For the reasons set forth above, Respondent's renewed motion to dismiss is granted.

3

4                                      **ORDER**

5          Accordingly, IT IS HEREBY ORDERED:

6          1) Respondent's motion to dismiss is GRANTED;

7          2) The petition for writ of habeas corpus is DISMISSED with prejudice for violating the

8    statute of limitations pursuant to 28 U.S.C. § 2244(d)(1);

9          3) The Clerk of Court is DIRECTED to enter judgment for Respondent.

10

11

12         IT IS SO ORDERED.

13   **Dated:    January 13, 2011         _____/s/ John M. Dixon_____**
                                          UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28