1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11  TOMMY RAY WILLIAMS,                          )  Case No.: 1:03-cv-05819-JLT
                                                )
12              Petitioner,                      )  ORDER GRANTING RESPONDENT'S MOTION
                                                )  TO WITHDRAW AFFIRMATIVE DEFENSE OF
13        v.                                     )  UNTIMELINESS
                                                )
14  MIKE KNOWLES, Warden,                        )
                                                )  ORDER TAKING EVIDENTIARY HEARING OFF
15              Respondent.                      )  CALENDAR
                                                )
16                                               )  ORDER SETTING BRIEFING SCHEDULE ON
                                                )  THE MERITS OF THE PETITION
17  _____     )

18        In 1998, Petitioner was convicted of second degree murder and DUI causing injury after he

19  collided with the victim's motorcycle.  Though the victim suffered serious injuries, he died after

20  medical staff improperly inserted his feeding tube, leading to peritonitis.  Petitioner claims here, as he

21  did in the state courts, that his lawyer failed him by not properly informing him of the legal

22  implications of the medical negligence and that, in fact, he is actually innocent of the murder charge.

23  **I.    PROCEDURAL HISTORY**

24        On October 23, 1998, Petitioner was convicted of second degree murder and driving while

25  under the influence of alcohol causing injury after entering a guilty plea. (Doc. 8, Exh. A) The Court

26  imposed an indeterminate 15-year-to-life sentence for the second degree murder conviction plus a

27  determinate three-year concurrent term for drunk driving offense.  (Id.).  Petitioner did not timely

28

1

1    appeal his conviction.[1]

2        Petitioner filed a petition for writ of habeas corpus with the Tuolumne County Superior Court.

3    (Doc. 8, Exh. B)  This petition raised four grounds for relief: (1) ineffective assistance of trial counsel

4    in that counsel, fearing for her own safety and intimidation resulting from the local publicity,

5    pressured Petitioner to accept a guilty plea rather than go to trial; (2) newly discovered evidence, i.e.,

6    an autopsy report of the victim indicating that peritonitis from an improperly placed feeding tube, not

7    from blunt head trauma resulting from the collision with Petitioner's vehicle, caused the victim's

8    death; (3) failure of the trial court to sua sponte inquire into the ineffective of counsel once the court

9    was advised of threats against counsel and Petitioner; and (4) error in imposing a restitution fine

10   without conducting a hearing on Petitioner's ability to pay.  (Doc. 8, Exh. B)  The Superior Court

11   denied the petition as untimely.   (Id., Exh. C)

12       Next, Petitioner filed a habeas petition in the Fifth District Court of Appeal, raising the same

13   issues (Doc. 8, Exh. D) as in his previous petition; it was denied.  (Id., Exh. E)   Petitioner filed a third

14   petition for writ of habeas corpus in the California Supreme Court which, again, raised the same

15   issues.  (Id., Exh. F) Once again, this petition was denied.  (Id., Exh. G)

16       Petitioner filed his initial federal petition on June 16, 2003.  (Doc. 1)  Appended to that petition

17   were the same legal briefs and arguments Petitioner raised in each of his three state court habeas

18   petitions.  (Id.)  In response, Respondent filed a motion to dismiss based upon the argument that the

19   petition was untimely under the Antiterrorism and Effective Death Penalty Act.  (Doc. 8)

20       The Court granted the motion to dismiss (Docs. 11, 12) and Petitioner appealed. (Doc. 13) The

21   Ninth Circuit reversed and remanded the case "for further factual development, and if determined

22   appropriate by the district court, an evidentiary hearing, to determine (1) whether petitioner satisfied

23   the actual innocence test set forth in Schlup v. Delo, 513 U.S. 298 (1995); (2) whether the statute of

---

[1] The parties have disputed whether Petitioner timely appealed his conviction.  On December 17, 1998, Petitioner signed two requests to withdraw his guilty plea, one for the Court of Appeal, Fifth Appellate District ("5th DCA) and one for the Tuolomne County Superior Court.  (Doc. 38, Exh. B).  Prison mail records logged these two documents on December 23, 1998.  (Doc. 38, Exh. C).  It is undisputed that the Superior Court received the document on December 28, 1998, and lodged it but did not file it.  (Doc. 38, Exh. D).  Although the Superior Court apparently construed the document as a notice of appeal, it notified Petitioner that his filing was deemed late since it was received beyond the sixty-day period for filing a notice of appeal.  (Id.).  On March 24, 1999, the  5th DCA issued an order denying the motion for acceptance of appeal, indicating that the appeal had been received beyond the sixty-day period and that Petitioner had waived his right to appeal because of his change of plea.  (Doc. 38, Exh. E).

limitations began to run on August 30, 2001, the date petitioner discovered the factual predicate for his claims; and (3) whether the statute of limitations should be equitably tolled until August 30, 2001." (Doc. 23)

On remand, Respondent filed a renewed motion to dismiss, again based on a violation of the one-year statute of limitations under AEDPA. (Doc. 28) In this motion, Respondent addressed "actual innocence" under Schlup and tolling for newly discovered evidence under § 2244(d)(1)(d); Respondent did not address the issue of equitable tolling. (Doc. 28, pp. 5-9) Petitioner opposed the motion and submitted, in support, his own declaration, prison mail logs and the case log of trial counsel. (Doc. 37)

The Court denied the motion to dismiss based on the conclusion that the record did not establish that trial counsel expressly told Petitioner of the contents of the autopsy report, i.e., that the improper insertion of the feeding tube was the cause of the victim's death. (Doc. 40) Based thereon, the Court concluded there was insufficient evidence that Petitioner discovered the factual basis for his claim of ineffective assistance at the time of the plea and denied the motion  Id.

Respondent filed a motion for reconsideration and argued that the Court's interpretation of trial counsel's statement that she had "shared" the contents of the autopsy report with Petitioner was misconstrued and that counsel's meaning, in truth, was that Petitioner's version of events was "a lie." (Doc. 41, p. 5) The Court denied the motion for reconsideration, concluding that Respondent's "evidence" regarding trial counsel's meaning was not new and that Respondent had failed to provide the Court with specific probative evidence regarding precisely what trial counsel had told Petitioner prior to the entry of the guilty plea. (Id.) Thereafter, Respondent filed an answer to the merits of the ineffective assistance of counsel claim, but also contended, once again, that the petition was untimely under 28 U.S.C. § 2244(d)(1). (Doc. 45) In his traverse, Petitioner addressed both the timeliness issue and the merits. (Doc. 48)

On April 29, 2009, the Court held an evidentiary to determine the timeliness issue. Specifically, the Court sought evidence as to whether trial counsel was ineffective in "failing to advise [Petitioner] of the contents and legal significance of the autopsy report prior to his guilty plea." (Doc. 51, p. 8) The Court indicated that, due to the absence of expert testimony, it was "not in a position to

determine whether the hospital's actions were grossly negligent under the circumstances and, hence, whether Petitioner would have likely succeeded at trial by asserting a lack of causation defense." (Id.) At the hearing, Petitioner and his trial counsel, Karen Block-Davis, testified. (Doc. 57; Doc. 60)

After the hearing, the Court granted the motion to dismiss. (Doc. 78) The Court concluded that it had insufficient evidence to determine whether the hospital's conduct constituted gross negligence—and thus, it could not determine whether there was an intervening legal cause of the victim's death. Id. However, the Court found that Petitioner had discovered the "factual basis" of his claim before entering his plea. Id. As a result, the Court found the petition was untimely. Id.

Petitioner appealed. (Doc. 80) The Ninth Circuit affirmed the Court's determination that Petitioner knew the factual basis of his claim before he entered his plea, which would make the petition untimely. (Doc. 89) However, during the pendency of the appeal, the United States Supreme Court determined that actual innocence constituted a basis for avoiding AEDPA's one-year limitation period. McQuiggin v. Perkins, 569 U.S.___, 133 S.Ct. 1925 (2013). Accordingly, the Ninth Circuit remanded the case to this Court "for a determination of whether [Petitioner's] actual innocence claim meets the standard set forth in McQuiggin so that he is entitled to an exception to the expiration of the AEDPA statute of limitations." (Doc. 89, pp. 2-3).

After remand and further briefing, the Court scheduled a second evidentiary hearing limited to whether the hospital staff's conduct in improperly inserting the victim's feeding tube constituted gross negligence such that it constituted the sole cause of death. (Doc. 99).

On August 18, 2015, Respondent filed a request to withdraw his motion to dismiss and expressly waived with prejudice, the affirmative defense of untimeliness. (Doc. 108) As a result, Respondent requested the Court cancel the evidentiary hearing. (Id.) While not opposing the withdrawal of the affirmative defense, Petitioner argued that Respondent's delay in litigating the motion to dismiss, coupled with the eleventh-hour request to withdraw that affirmative defense, amounted to an admission that Petitioner has met the actual innocence test under AEDPA and, accordingly, that the petition should be granted. (Doc. 109, p. 3). Alternatively, Petitioner requested that the hearing remain on calendar and that evidence be presented on the actual innocence claims which, he contends, "lie at the heart of [Petitioner's] habeas claims." (Id.)

## II.	DISCUSSION

### A.	Request to withdraw the affirmative defense

Under federal procedural rules, the statute of limitations is an affirmative defense that must be raised in a responsive pleading.  Fed. R. Civ. Proc. Rule 8(c)(1).  Under federal habeas rules, a respondent must assert a statute of limitations defense in the responsive pleading or it is waived.  Rule 5(b) of the Rules Governing sec. 2254 Cases[2] ; Morrison v. Mahoney, 399 F.3d 1042 (9th Cir.2005). An affirmative defense, once forfeited, is "exclu[ded] from the case," 5 C. Wright & A. Miller, Federal Practice and Procedure § 1278, pp. 644–645 (3d ed. 2004), and, as a rule, cannot be asserted on appeal. See Day v. McDonough, 547 U.S. 198, 217 (2006) (Scalia, J., dissenting); Weinberger v. Salfi, 422 U.S. 749, 764 (1975); McCoy v. Massachusetts Inst. of Technology, 950 F.2d 13, 22 (C.A.1 1991) ("It is hornbook law that theories not raised squarely in the district court cannot be surfaced for the first time on appeal."). Respondent complied with both rules by filing his motion to dismiss for violation of the AEDPA's statute of limitation in his first responsive pleading.  (Doc. 8)

On the other hand, a state forfeits its statute of limitations defense only if it intentionally waived it. Day, 547 U.S. at 202.  In Day, the Court determined that the state's miscalculation of the AEDPA statute of limitations leading to the failure to raise the statute of limitations in the responsive pleading, did not constitute an "intelligent waiver on the [s]tate's part."  Id. The Supreme Court held that the state did not forfeit the statute of limitations defense because there was no evidence that the state "strategically withheld the defense or chose to relinquish it [,] ... [rather,] it was merely an inadvertent error." Id. at 211.

Subsequently, the Supreme Court held that a court has the authority, but not the obligation, to address the timeliness of a state prisoner's federal habeas petition on the court's own initiative except where it was deliberately and intelligently waived. Wood v. Milyard, ___ U.S. ___, 132 S.Ct. 1826, 1833-1835 (2012). Once a respondent knowingly waives a "threshold bar" the court abuses its

---

[2] The Civil Rules "govern the procedure in the United States district courts in all suits of a civil nature." Rule 1. This includes "proceedings for ... habeas corpus," Rule 81(a)(2), but only "to the extent that the practice in such proceedings is not set forth in statutes of the United States [or] the Rules Governing Section 2254 Cases" (Habeas Rules), Civil Rule 81(a)(2); see also Habeas Rule 11. Thus, "[t]he Federal Rules of Civil Procedure apply in the context of habeas suits to the extent that they are not inconsistent with the Habeas Corpus Rules," Woodford v. Garceau, 538 U.S. 202, 208, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003), and do not contradict or undermine the provisions of the habeas corpus statute, Gonzalez v. Crosby, 545 U.S. 524, 529–530, 125 S.Ct. 2641, 2644–2645, 162 L.Ed.2d 480 (2005).

1    discretion if it denies the petition on the basis of that bar without reaching the merits of the claims.

2    Wood, 132 S.Ct. at 1830 (a "court is not at liberty…to bypass, override, or excuse a State's deliberate

3    waiver of a limitations defense."). As the Supreme Court has explained, "should a State intelligently

4    choose to waive a statute of limitations defense, a district court would not be at liberty to disregard

5    that choice." Day, 547 U.S. at 210, 126 S.Ct. at 1684, n. 11.

6        Indisputably, Respondent has intentionally and knowingly waived the statute of limitations

7    affirmative defense and this Court is not in a position to second-guess that waiver. Though Petitioner

8    argues that Respondent has delayed the proceedings by repeatedly reasserting the timeliness defense at

9    every juncture over the last twelve year, there is no evidence of bad faith or dilatory intent. Both sides

10   have pursued the prosecution and defense of this issue with vigor and zealousness. The fact that

11   Respondent has made a strategic decision to abandon that defense at this time is within his rights and

12   in no way suggests any impropriety. Accordingly, the Court will grant Respondent's request to

13   withdraw the motion to dismiss and the affirmative defense of statute of limitations.[3]

14        B.   The Evidentiary Hearing.

15        The record relating to the primary issue on remand, i.e., actual innocence, is limited because,

16   as the procedural history establishes, this issue has never been squarely presented to the Court as a

17   merits question. During the course of the evidentiary hearing held in 2009, the parties presented

18   evidence related to when Petitioner became aware of the possibility that the victim died as a direct

19   result of peritonitis rather than due to the injuries inflicted by Petitioner. The primary evidence in this

20   regard included the Memorial Hospital Discharge Summary, the hospital's treatment notes and the

21   autopsy report. (Doc. 93, Exhibits 1, 2, and 3).

22        When, after the most recent remand, the Court ordered the parties to submit briefs on the issue

23   of actual innocence, neither party contended that further evidence was required or that an evidentiary

24   hearing was desired. Indeed, the briefs of the parties spend scant time on this issue, both apparently

25   assuming that the current record was entirely adequate to resolve the fact question of actual innocence

26

27   _____
     [3] Petitioner argues that Respondent's withdrawal of the affirmative defense is tantamount to an admission that Petitioner is
28   actually innocent, and therefore, the petition must be granted. (Doc. 109, p. 4). Nothing in the Court's review of the law
     regarding affirmative defenses suggests that waiving a defense constitutes an admission of any sort. Indeed, Petitioner
     does not cite any legal authority in support of that proposition. Accordingly, the Court rejects it.

6

1  now before the Court.  In that brief, Petitioner argued succinctly that the autopsy report and the

2  hospital's medical records,

3          . . . establish petitioner Williams' actual innocence of second-degree murder.  The coroner's
          autopsy report identified a misplaced feeding tube and the resulting peritonitis as the cause of

4        the victim's death, and the hospital records establish the gross negligence of medical staff for
          reinserting a feeding tube into the victim's abdomen instead of his stomach. [footnote] This

5        reliable exculpatory evidence meets the threshold requirement articulated in Schlup and House,
          "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty

6        beyond a reasonable doubt."

7  (Doc. 93, pp. 6-7).

8          Respondent was even more concise, emphatically concluding that "the autopsy report does not

9  show Petitioner is innocent," before going on to point out that it would have been a jury question and

10  that jurors could have reasonably concluded that Petitioner's conduct was the "but for" cause of the

11  victim's death "even if there was another contributing cause."  (Doc. 92, p. 8).  The parties relied on

12  no other evidence and neither party cited any specific portion of the autopsy report or the hospital's

13  medical notes as support for his legal position.

14          Rule 8(a) of the Rules Governing Section 2254 Cases provides that where a petition is not

15  dismissed at a previous stage in the proceeding, the court, after the answer and transcripts and record

16  of the state court proceedings are filed, shall, *upon review* of those proceedings, determine whether an

17  evidentiary hearing is required.  The purpose of an evidentiary hearing is to resolve the merits of a

18  factual dispute.  An evidentiary hearing on a claim is required where it is clear from the petition that:

19  (1) the allegations, if established, would entitle the petitioner to relief;  and (2) the state court trier of

20  fact has not reliably found the relevant facts.  See, Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th

21  Cir.1992).  As the function of an evidentiary hearing is to try issues of fact, Townsend v. Swain 372

22  U.S. 293, 309 (1963)(*overruled in part by* Keeney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715

23  (1993)), such a hearing is unnecessary when only issues of law are raised. Id.

24          AEDPA sets several limits on the power of a federal court to grant an application for a writ of

25  habeas corpus on behalf of a state prisoner.  Section 2254(a) permits a federal court to entertain only

26  those applications alleging that a person is in state custody "in violation of the Constitution or law or

27  treaties of the United States."   Likewise, sections 2254(b) and (c) provide that a federal court may not

28  grant such applications unless, with certain exceptions, the applicant has exhausted state remedies.

1      If an application includes a claim that has been "adjudicated on the merits in State court

2    proceedings,"(§ 2254(d)), the Court may not grant the petition "unless the adjudication of the claim,"

3       "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,
    clearly established Federal law, as determined by the Supreme Court of the United States; or

4       "(2) resulted in a decision that was based on an unreasonable determination of the facts in light

5        of the evidence presented in the State court proceeding."

6    This is a "difficult to meet" (Harrington v. Richter, 562 U.S. 86, 101 (2011)) and "highly deferential

7    standard for evaluating state-court rulings, which demands that state-court decisions be given the

8    benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal

9    quotation marks omitted). The petitioner bears the burden of proof. Id. at 25.

10     Petitioner still has not established any entitlement to an evidentiary hearing.[4]  Petitioner's

11   asserts his change of plea occurred under circumstances that violated his right to federal due process,

12

13   _____

14     [4] **Error! Main Document Only.**In Cullen v. Pinholster, 563 U.S. 170 (2011), decided after the first evidentiary
hearing was held in this case, the Supreme Court held that review under § 2254(d)(1) is limited to the record that was
before the state court that adjudicated the prisoner's claim on the merits.  The Court held that the provision's "backward-

15   looking language requires an examination of the state-court decision at the time it was made." Id., at 1398.  Thus, §
2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions
"against this Court's precedents *as of 'the time the state court renders its decision*.'" Id., at 1399 (quoting Lockyer v.

16   Andrade, 538 U.S. 63, 71-72 (2003)(emphasis in original).  As the Court explained, "It would be contrary to that purpose
to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court

17   and reviewed by that court in the first instance effectively de novo."  Id. The Court reiterated that "[i]f a claim has been
adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the

18   record that was before the state court." Id. at 1400. It recognized that "not all federal habeas claims ... fall within the scope
of § 2254(d), which applies only to claims 'adjudicated on the merits in the State court proceedings.'" Id . at 1401; Stokley

19   v. Ryan, 659 F.3d 802, 808 (9th Cir.2011) ("Pinholster also held that this bar on new evidence is coterminous with the
scope of § 2254(d). If a petitioner presents a claim that was not adjudicated on the merits ... federal review is not

20   necessarily limited to the state record.").
  Notably, the Superior Court denied Petitioner's state habeas petition noting that Petitioner had "failed to raise his

21   claims in a timely fashion.  He does not show that his delay was justified by recent discovery of a new legal or factual basis
in support of his claim or that his claim falls within an exception to the time limits bar."  (Petitioner's Excerpt of Record,

22   Ninth Circuit, Ex. 3, p. 2).  Subsequently, the 5th DCA and the California Supreme Court denied Petitioner's habeas
petitions without comment.  To determine whether a state procedural ruling bars federal review, the district court will look

23   to the last reasoned opinion on the claim. Lambright v. Stewart, 241 F.3d 1201, 1205 (9th Cir. 2001).  Where, as here, a
superior court imposes the procedural bar, an unexplained denial from the state supreme court presumptively does not

24   represent a decision on the merits that lifts that default.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

25     The record indicates that Respondent did not raise the state procedural bar in his responsive pleading and, instead,
relied only on AEDPA's one-year limitation period.  Indeed, Respondent has not raised the procedural bar at any time

26   during the 12-year life of this case.  Accordingly, Respondent has waived the defense.  See Fed. R. Civ. Proc. Rule 8(c)(1);
Rule 5(b) of the Rules Governing sec. 2254 Cases.  However, this means only that the Court, in addressing the merits of

27   Petitioner's claims, will conduct a de novo review of the record. Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011)
(When it is clear that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28

28   U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim *de novo*); Reynoso v. Giurbino, 462 F.3d
1099, 1109 (9th Cir.2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.2003).  Thus, Respondent's waiver of the state
timeliness bar does not answer the question whether an evidentiary hearing is required in this instance.

that Petitioner was denied the effective assistance of counsel, that the trial court failed to inquire into a possible conflict of interest on the part of defense counsel, and that the state restitution order was invalid.  Whether the hospital was the sole cause of the victim's death has no bearing upon whether counsel was ineffective or whether the plea was constitutionally valid.  It is clear from the present record—including the Court's findings after the first evidentiary hearing—that trial counsel knew the hospital's action caused the peritonitis that this could preclude criminal liability, that she conveyed this information to Petitioner, and that knowing this information, Petitioner decided to change his plea nonetheless.  Determining whether the hospital's action was, indeed, the sole cause of death would not address whether Petitioner's change of plea was knowing and voluntary or whether counsel, *who acted on the assumption that the hospital's misfeasance was a complete defense*, was ineffective in recommending that Petitioner plead guilty.

Likewise, to the extent that Petitioner contends that his due process claim is equivalent to a claim of actual innocence, the latter has never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Herrera v. Collins, 506 U.S. 390, 401 (1993); see Townsend v. Sain, 372 U.S. 293, 317 (1963) ("the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus" in the absence of a claim regarding the constitutionality of the petitioner's detention). On the other hand, though ambiguously pleaded, it appears that Petitioner's federal due process claim is based upon the assertion that his guilty plea was infected with constitutional error by virtue of Petitioner pleading guilty to a crime for which no factual basis existed. Standing on this contention, he seems to assert that this claim can be adjudicated only after conducting an evidentiary hearing on the issue of his actual innocence, i.e., whether the death was due solely to hospital malfeasance. However, Petitioner conflates the McQuiggin v. Perkins, 569 U.S. ___, 133 S.Ct. 1924 (2013), actual innocence standard and the due process inquiry into the validity and voluntariness of Petitioner's plea.  They are separate and distinct legal issues.  Moreover, the circumstances of Petitioner's plea are shown in the transcript of the change of plea hearing and in documentary evidence subsequently presented to this Court.

Thus, because Petitioner has not established that a factual determination regarding the

1  hospital's purported culpability in the victim's death would, if established, entitle Petitioner to relief,

2  no evidentiary hearing is warranted.  See Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th Cir.1992).

3  Accordingly, the Court orders the evidentiary hearing to be vacated.

4          C.  Briefing Schedule.

5          Though the merits were briefed in 2006, the Court will afford the parties the opportunity to

6  address the merits in light the development that have ensued in the succeeding nine years.

7  Accordingly, the parties are ordered to file simultaneous merits briefs within thirty days of the service

8  of this order.  The parties may file simultaneous reply briefs within fifteen days thereafter.

9                                       **ORDER**

10         For the foregoing reasons, the Court **ORDERS**:

11         1.      Respondent's motion to withdraw the affirmative defense of untimeliness, is

12                 **GRANTED**;

13         2.      The evidentiary hearing scheduled for September 15, 2015, is **VACATED**;

14         3.      The Parties are **ORDERED** to file briefs on the merits of the petition within thirty days

15                 of the date of service of this order.  The parties may file reply briefs within fifteen days

16                 of the filing of the briefs on the merits.  The matter will be deemed submitted at that

17                 time.

18

19  IT IS SO ORDERED.

20      Dated:   **August 21, 2015**                    **/s/ Jennifer L. Thurston**

21                                       UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28